# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

JAMES GOODWIN, JOHN INGRAM,
RAYMOND LOVEJOY, JEFFREY ALLEN,
CHARLES LILLY, and RAYMOND MUNCY,
**Plaintiffs Below, Petitioners**

**FILED**
**December 23, 2024**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-186**  (Cir. Ct. McDowell Cnty. Case Nos. CC-27-2021-C-76 to -80 and CC-27-2023-C-12)

3M COMPANY, AMERICAN OPTICAL CORPORATION,
CABOT CSC CORPORATION, CABOT CORPORATION,
AEARO TECHNOLOGIES, LLC, AEARO, LLC,
MINE SAFETY APPLIANCES COMPANY, LLC,
EASTERN STATES MINE SUPPLY COMPANY,
RALEIGH MINE AND INDUSTRIAL SUPPLY, and
UNITED CENTRAL INDUSTRIAL SUPPLY, LLC,
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioners appeal the April 26, 2024, order from the Circuit Court of McDowell County. Respondents Eastern States Mine Supply Company and Raleigh Mine and Industrial Supply did not file a response; however, the remaining Respondents each individually or jointly filed a response in support of the circuit court's order.[1] Petitioners filed a reply.

The issue on appeal is whether the circuit court erred in granting summary judgment to respondents, finding that petitioners' individual claims were all barred by the applicable

---

[1] Petitioners are represented by Lonnie C. Simmons, Esq., Robert M. Bastress III, Esq., Samuel B. Petsonk, Esq., and Bren J. Pomponio, Esq. Respondent 3M Company is represented by Bryant J. Spann, Esq., and Robert H. Akers, Esq. Respondents Aearo Technologies, LLC, Aearo LLC, American Optical Corporation, Cabot CSC Corporation, and Cabot Corporation are represented by Marc E. Williams, Esq., Thomas M. Hancock, Esq., Kendra L. Huff, Esq., Alexander C. Frampton, Esq., and Allyssa A. Kimbler, Esq. Respondent Mine Safety Appliances Company, LLC, is represented by Nicholas S. Johnson, Esq., John A. Budig, Esq., and Joshua I. Hammack, Esq. Respondent United Central Industrial Supply, LLC, is represented by Caleb B. David, Esq., and Michael D. Dunham, Esq.

1

two-year statute of limitations. This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioners are former coal miners who have spent extended periods of time working in West Virginia coal mines. While working in the mines, each wore a dust respirator mask ("mask") manufactured or distributed by one or more of the respondents. Specifically, Respondent 3M Company ("3M"), Respondent Mine Safety Appliances, LLC ("MSA"), and Respondents Aearo Technologies, LLC, Aearo, LLC, American Optical Corporation, Cabot CSC Corporation, and Cabot Corporation (collectively "AAC") are the named manufacturers in this case. Respondents Eastern States Mine Supply ("Eastern"), Raleigh Mine and Industrial Supply ("Raleigh"), and United Central Supply ("United") are identified as distributors.

As detailed below, petitioners wore masks to protect themselves from work-related exposure to coal, rock, or sand dust, which are known to be hazardous and linked to pneumoconiosis and other related latent occupational lung diseases. Nevertheless, petitioners were ultimately diagnosed with coal, rock, or sand dust-related latent respiratory conditions. In response, petitioners filed separate products liability actions against various respondents in the Circuit Court of McDowell County for those work-related injuries. The circuit court consolidated the cases for the purposes of discovery and decision.

**James Goodwin**

James Goodwin worked as a mason in various coal mines between 1971 and 1992, building stoppings and overcast for mine ventilation. He recalled wearing masks manufactured by AAC and 3M approximately sixty percent of the time while working to protect him from inhaling coal dust and developing an occupational lung disease. During his deposition, he acknowledged that prior to his mining career, he was aware of black lung and knew individuals who died from the disease. He knew it was hazardous to inhale coal dust and was aware of other individuals filing coal-related mask litigation while working in the mines. Mr. Goodwin further indicated that while wearing a mask, he could smell and taste coal dust, and when he would remove the device, there would be coal dust on his face from under the mask.

On February 26, 2003, Dr. Afzal Ahmed diagnosed Mr. Goodwin with chronic obstructive pulmonary disease ("COPD") based upon "[eighteen] years of coal, rock, and underground dust exposure." In 2003, Mr. Goodwin filed a workers' compensation claim for occupational pneumoconiosis ("OP") benefits after Dr. Hortencia Fernandez diagnosed him with OP on March 26, 2003. On April 11, 2019, Mr. Goodwin applied for federal black lung benefits and noted in his application that he had a bad cough in the mornings, trouble

breathing, was short of breath, and had to regularly rely upon inhalers and oxygen to aid his breathing. On July 29, 2019, Dr. Anna Allen diagnosed him with coal workers' pneumoconiosis, a form of OP which is commonly known as black lung disease;[2] chronic bronchitis; and obstructive lung disease based upon "[twelve-plus] years of dust exposure related to coal extraction." Radiologist, Dr. Kathleen DePonte reviewed a chest x-ray performed on June 13, 2019, and confirmed that Mr. Goodwin had simple pneumoconiosis. This x-ray was later reviewed by other radiologists as part of Mr. Goodwin's federal black lung benefits claim. Those experts offered conflicting opinions, which either confirmed or contradicted Dr. DePonte's diagnosis with three of the five x-ray readings refuting Mr. Goodwin's pneumoconiosis diagnosis. In his 2023 deposition, Mr. Goodwin testified that in July of 2019, he told Dr. Allen that he had shortness of breath and recalled her telling him that he had black lung.

In June 2020, Mr. Goodwin retained counsel for his federal black lung claim. On April 27, 2021, the United States Office of Workers' Compensation Programs ("OWCP") issued a Proposed Decision and Order which found that Mr. Goodwin was totally disabled due to his coal mine employment, but also found that he did not have pneumoconiosis, noting that three of the five x-ray reviews refuted such diagnosis. Mr. Goodwin's employer requested a formal OWCP hearing in the matter. According to the record, the hearing was held but the administrative law judge ("ALJ") had not issued a decision as to whether Mr. Goodwin suffers from any form of pneumoconiosis prior to the filing of the case sub judice.

With an OWCP decision pending, Mr. Goodwin filed this current litigation in circuit court on December 17, 2021, which named 3M, AAC, Eastern, and Raleigh as defendants and alleged claims for strict tort liability, negligence, breach of implied warranty, fraud, and damages.

The circuit court concluded that Mr. Goodwin's claim had begun to run more than two years prior to the filing of his complaint. It determined that at the earliest, he was aware following his 2003 coal dust-related diagnosis of a possible connection between the masks and his latent occupational lung disease, and at the latest, he was aware of a potential claim against the respondents in July 2019 when Dr. Allen made her diagnoses and informed Mr. Goodwin he had black lung. Moreover, Mr. Goodwin acknowledged that he knew which respondents manufactured the masks he wore. The circuit court found that at the latest, the statute of limitations began to run on July 30, 2019, and the latest deadline for filing his complaint was July 31, 2021, which rendered his December 17, 2021, complaint untimely.

---

[2] Coal workers' pneumoconiosis and black lung disease are synonymous. Thus, for consistency, we will refer to coal workers' pneumoconiosis as black lung or black lung disease throughout this decision.

**John Ingram**

John Ingram worked in coal mines from 1978 until 2002 and wore masks manufactured by 3M and MSA. According to Mr. Ingram, he wore a mask approximately eighty percent of the time while working in high coal dust conditions, mainly during the 1980s and 1990s while operating a roof bolter machine. Overall, he estimated that he wore masks around fifty percent of the time in which he was performing underground mining work. Mr. Ingram first learned of black lung disease and OP during the 1980s through annual mine safety trainings and further learned through subsequent annual trainings that the dust masks might protect him from black lung.

In 1991, Mr. Ingram filed a workers' compensation claim for OP benefits. In his application, he reported "shortness of breath for four to five years duration and a chronic cough for four to five years which has been non-productive." On February 18, 1992, the West Virginia Occupational Pneumoconiosis Board ("OP Board") concluded that based upon the medical report of Dr. Short dated December 21, 1990,[3] there was sufficient medical evidence to find that Mr. Ingram had OP with no pulmonary functional impairment. By decision dated March 24, 1992, he was granted a *de minimis* 5% OP award.[4]

Mr. Ingram filed a federal black lung claim on August 8, 2012. Following a physical examination and chest x-ray on September 6, 2012, Dr. D. Gaziano diagnosed Mr. Ingram with black lung disease based upon "[twenty-three] years underground with exposure to coal dust and rock dust as a roof bolter with a positive chest x-ray." In an order dated February 26, 2013, the U.S. Department of Labor ("DOL"), found that he had an OP

---

[3] The circuit court's order and the appellate briefs state that Dr. Short's evaluation was performed in 1991. However, we note that according to the February 18, 1992, findings of OP Board, which is the document relied upon by the court and the parties for this information, it states that Dr. Short's medical report was dated December 21, 1990. While this discrepancy does not have any bearing on the circuit court's ultimate disposition below or our ruling on appeal, we are correcting this date to conform with the record.

[4] For background, West Virginia Code § 23-4-6a (1995) permitted the OP Board to award some coal miners a *de minimis* 5% award for black lung without any impairment. However, following amendments in 2003, the Legislature eliminated benefits for OP claimants "without measurable pulmonary impairment" and that requirement remains under the current statute. *Compare* W. Va. Code § 23-4-6a (2003), *with* W. Va. Code § 23-4-6a (2005). However, federal black lung benefits require medical evidence of a dust-related respiratory or pulmonary impairment, which results in total disability or death. *See* 30 U.S.C. 932(c) (2010) (stating that total disability or death due to pneumoconiosis is required to be eligible for federal black lung benefits).

4

diagnosis related to his coal mine work. However, DOL further determined that Mr. Ingram was not totally disabled and denied his federal claim. On May 27, 2021, Mr. Ingram filed his second federal black lung claim because he believed that his breathing had worsened between 2012 and 2021. In this application, Mr. Ingram noted that he had taken a job as a scoop operator in 2001 because he "was getting too short of breath from roof bolting." On November 18, 2021, OWCP sent Mr. Ingram a Schedule for the Submission of Additional Evidence ("SSAE") which preliminarily concluded that he was totally disabled by black lung.

Mr. Ingram filed his complaint on December 17, 2021, against 3M, MSA, Eastern, and Raleigh. He brought claims for strict tort liability, negligence, breach of implied warranty, fraud, and damages. Based upon these facts, the circuit court determined that as early as his OP claim in 1991 and no later than his first federal black lung application in August 2012, Mr. Ingram should have been reasonably aware of a connection between the masks and his breathing problems. The circuit court found that the latest date for the two-year statute of limitations began to run was August 8, 2012, making his complaint time barred.

**Raymond Lovejoy**

Raymond Lovejoy worked in coal mines from 1971 until his retirement in 2017. In his deposition, Mr. Lovejoy testified that prior to beginning his mining career he was aware that inhaling coal dust could cause black lung, and that throughout his career, he learned more about the disease and how to prevent it through the use of masks during annual safety trainings. He indicated that during the 1980s and 1990s, he wore a mask approximately 75-80 percent of the time, wore MSA masks in the 1990s, and began wearing 3M masks in 1998, which he stated he wore less while surface mining because it produced less coal dust than underground mining. Even though he wore masks, he was aware coal dust was in his lungs because he noticed dust inside the masks, coughed up coal dust after his shifts, and blew coal dust out of his nose.

On December 14, 1999, radiologist, Dr. Manu Patel, reviewed Mr. Lovejoy's chest x-ray and diagnosed him with OP; this diagnosis was confirmed by Dr. Donald Rasmussen on January 13, 2000. Mr. Lovejoy filed a workers' compensation claim for OP benefits on January 20, 2000, and on October 22, 2002, he was awarded twenty-five percent disability based upon his OP diagnosis. On September 29, 2015, Dr. Phillip D. Cox confirmed Mr. Lovejoy's breathing problems based upon his history of black lung (silicosis), COPD, and emphysema. Upon learning of his black lung diagnosis, Mr. Lovejoy stated that he internally questioned whether the masks he wore had been working. At the time he retired on November 4, 2017, his breathing problems were comparatively worse.

5

He applied for federal black lung benefits on February 23, 2018,[5] claiming total disability due to black lung. In support of his federal claim, Dr. Anna Allen examined Mr. Lovejoy on May 14, 2018. Dr. Allen diagnosed him with mixed restrictive/obstructive disease and chronic bronchitis. She opined that his mixed restrictive/obstructive lung disease was the primary and significant cause of his impairment; and that his diagnoses were primarily due to forty-five years of coal dust exposure during coal extraction activities.

Multiple other physicians either examined Mr. Lovejoy or performed record reviews for his federal claim. While the physicians gave varying diagnoses in their reports, all agreed that there was no evidence that Mr. Lovejoy was suffering from a form of clinical pneumoconiosis such as black lung; however, they offered conflicting opinions as to whether Mr. Lovejoy's lung impairments qualified as legal pneumoconiosis.[6] On February 22, 2022, OWCP issued its decision, which found that Mr. Lovejoy was totally disabled from a pulmonary or respiratory impairment. On this issue, the decision found there was no evidence that Mr. Lovejoy suffered from clinical pneumoconiosis, but the record supported a finding that he suffered from legal pneumoconiosis. He was retroactively awarded federal benefits effective March 2018.

Prior to the OWCP's decision, Mr. Lovejoy filed this present litigation in circuit court on December 17, 2021. His complaint named 3M, MSA, Eastern, and Raleigh as defendants and stated claims for strict tort liability, negligence, breach of implied warranty, fraud, and damages. The circuit court found that the statute of limitations for Mr. Lovejoy's claims began to run as early as his OP disability award in 2002 and as late as February 23, 2018, when he filed for federal black lung benefits claiming total disability from OP. As such, it was determined that at the very least, Mr. Lovejoy's complaint was filed more than one year after the statute of limitations expired.

---

[5] According to the copy of Mr. Lovejoy's federal claim form in the record, he signed and dated the same on February 23, 2018. Whereas the February 28, 2022, decision of OWCP states that his claim was filed on March 1, 2018. However, under either operative date, we conclude that Mr. Lovejoy's complaint was untimely filed.

[6] For purposes of federal black lung benefits, clinical pneumoconiosis "consists of those diseases recognized by the medical community as . . . characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." *See* 20 C.F.R. § 718.201(a)(1) (2014). Legal pneumoconiosis "includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment," including but not limited to, "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." *See* 20 C.F.R § 718.201(a)(2) (2014).

**Jeffrey Allen**

Jeffrey Allen began working in underground coal mines in 1975 and continued such work for over forty-five years. Mr. Allen testified during his deposition that his father had black lung, he began his coal mining career knowing the dangers associated with coal dust, and that he wore masks to protect his lungs. He stated that the proportion of his work shift that he wore a mask varied depending on the mine and its conditions but estimated that he wore a mask between twenty-five and seventy percent of the time. During his mining career, he purchased his masks through United and recalled wearing masks manufactured by 3M, MSA, and AAC. While wearing the masks, he felt coal dust in them, and would cough up white and black discharge.

On October 13, 2015, Mr. Allen sought medical care for heartburn, pneumoconiosis, and hypertension. He was seen by Nurse Practitioner Amy Proffitt, who assessed Mr. Allen with black lung based upon his exposure to coal dust. On August 7, 2018, Dr. Vishnu Patel, a pulmonary specialist, diagnosed Mr. Allen with mild COPD based upon airway obstruction. On November 6, 2019, Mr. Allen filed a workers' compensation claim for OP benefits.

Mr. Allen underwent a chest scan on November 29, 2019, for an examination related to black lung. According to Mr. Allen, he began having breathing problems prior to the scan. It was reviewed by Nurse Practitioner Jenine L. Ward, who determined that he had "multiple micro nodularities . . . in the bilateral lung fields." At his deposition, Mr. Allen stated that during his scan on November 29, 2019, he was told to file a rock dust claim. In an examination report dated December 10, 2019, Dr. Patel found that Mr. Allen had bilateral pulmonary fibrosis secondary to pneumoconiosis and coal mine work. Dr. Patel's examination report also observed that Mr. Allen's November 29, 2019, chest scan "showed evidence of bilateral multiple tiny lung nodules consistent with pneumoconiosis[.]"

On August 19, 2021, the OP Board determined that Mr. Allen had 15% impairment from OP, and by claim decision dated December 6, 2021, he was awarded 15% permanent partial disability by workers' compensation. During his deposition, Mr. Allen testified that he thought this disability award was based upon silicosis from rock dust instead of pneumoconiosis. He stated that he did not know that he had black lung until he filed this underlying civil action, claiming he believed that Dr. Patel's earlier OP diagnosis was based upon silicosis from rock dust.

On December 17, 2021, Mr. Allen filed this present litigation in circuit court, naming 3M, AAC, MSA, and United as defendants. His complaint sought damages based upon theories of strict tort liability, negligence, breach of implied warranty, and fraud. The circuit court recognized that silicosis and black lung were both forms of OP. Thus, Mr. Allen's complaint was filed more than two years after he knew or had reason to know that he had a coal dust-related injury and a potential claim against respondents. Specifically,

the circuit court concluded that Mr. Allen's potential claim arose as early as October 13, 2015, and as late as December 10, 2019.

**Charles Lilly**

Charles Lilly worked in coal mines from 1964 until 1983. During his deposition, Mr. Lilly identified the mask he mainly wore as one manufactured by AAC, and stated that he wore the masks for protection because he knew the dangers of coal and rock dust. He stated that he regularly had to remove his mask at mid-shift to clean dust from its filters. Dust would come through the mask's filters, and when he removed the mask at the end of his shift, there would be coal dust on his face. Mr. Lilly testified that in the early 1970s he went to a doctor because he was having difficulty breathing and the doctor discovered a big spot on his lungs. Mr. Lilly continued mining into the 1980s before going to work for a tree company until 1984. While with the tree company, he continued to cough up coal and rock dust and had to leave that employment because of continued breathing problems.

On May 22, 2018, radiologist, Dr. Bharat Patel, diagnosed Mr. Lilly with pneumoconiosis. According to Mr. Lilly, at this time he was told that he had silicosis on his lungs from coal dust exposure and that he should contact a lawyer to file a claim. He filed a federal black lung claim on March 27, 2018, claiming he had shortness of breath and trouble walking due to black lung or pneumoconiosis. OWCP denied the claim on December 31, 2018, based upon its conclusion that Mr. Lilly did not suffer from any form of pneumonoconiosis or breathing impairment related to the disease. Following a formal hearing before OWCP's ALJ, that decision was reversed by decision dated May 28, 2021. Mr. Lilly was determined to be totally disabled based upon a finding of legal pneumoconiosis. The decision expressly found that there was no evidence to support a finding of clinical pneumoconiosis.

Mr. Lilly filed his underlying complaint on December 19, 2021, naming 3M, AAC, Eastern, and Raleigh as defendants. Strict tort liability, negligence, breach of implied warranty, fraud, and damages were alleged in his complaint. The circuit court determined that his complaint was filed more than two years after the triggering of the statute of limitations. On this issue, the circuit court concluded that Mr. Lilly became aware of a potential claim on May 22, 2018, when Dr. Patel diagnosed him with pneumoconiosis, he was informed he had silicosis from dust exposure, and encouraged to contact a lawyer to file a claim. Thus, Mr. Lilly had reason to know on or before that date that he had a potential products liability claim against respondents.

**Raymond Muncy**

Raymond Muncy worked in coal mines from 1976 to 1998 and wore a mask manufactured by MSA. On January 6, 1986, the state workers' compensation fund awarded Mr. Muncy a 5% *de minimis* OP disability award based upon findings of the OP Board. He

filed for federal black lung benefits on May 2, 2016. On August 16, 2016, a chest x-ray was performed on Mr. Muncy. After reviewing the x-ray, Dr. Antoine G. Habre diagnosed Mr. Muncy with complicated black lung.[7] During his deposition, Mr. Muncy recalled Dr. Habre telling him in August 2016 that he had simple black lung and complicated black lung. He claims that in November 2022 he overheard individuals speaking about defective masks being supplied to coal mines in West Virginia, and within weeks he retained counsel.

On March 1, 2023, Mr. Muncy filed suit against MSA, Eastern, and Raleigh, seeking damages based upon theories of strict tort liability, negligence, breach of implied warranty, and fraud. The circuit court determined that Mr. Muncy knew he had black lung on August 16, 2016, because the masks he wore did not prevent his inhalation of coal dust; therefore, he had reason to know of a potential claim at that time. The circuit court concluded that his complaint was time barred because it was filed more than six years after learning of his black lung diagnosis, which he reasonably should have known could be linked to the masks he wore, as well as his potential products liability claim.

**The Circuit Court Decision Below**

Following the close of discovery, respondents filed separate motions for summary judgment, arguing that petitioners' individual claims were barred by the two-year statute of limitations. Respondents argued that petitioners knew, or reasonably should have known, the facts underlying their respective claims more than two years prior to the filing of their complaints. The circuit court heard the motions on April 26, 2024, and on that same day, entered the summary judgment order presently on appeal. In that order, the circuit court ultimately concluded that petitioners' claims were time barred because each complaint was filed beyond the two-year statute of limitations.

On this issue, the circuit court applied the five-step analysis established by Syllabus Point 5 of *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009), which states:

> A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to

---

[7] According to Mr. Muncy, the OWCP issued a proposed decision on May 11, 2017, granting his federal black lung claim. However, on July 11, 2018, the OWCP's ALJ remanded the matter to the OWCP after it was determined that the incorrect mine operator was named by OWCP in its decision. Mr. Muncy maintains that his federal claim was never adjudicated on the merits. We find that these specific facts do not change the outcome of the circuit court's ruling below, or our ruling on appeal.

determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W. Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

*Id.*

The circuit court began its analysis by noting that the parties agreed as to the first and fifth step of the analysis; namely, that a two-year statute of limitations applied to products liability actions and that no other tolling doctrines applied to petitioners' claims. It also set forth the elements of a products liability action as required by step two.

Next, in considering steps three and four of *Dunn*, the circuit court addressed petitioners' argument that their pure latent injuries required application of the discovery rule to toll the statute of limitations on their claims. They argued that pursuant to the decision in *Jones v. Trustees of Bethany College,* 177 W. Va. 168, 351 S.E.2d 183 (1986), the discovery rule tolls the limitations period in products liability cases involving "pure latent injury" because the onset of the injury is "not sufficiently pronounced" to put a plaintiff on notice that he has been injured by the defective product. In other words, petitioners argued that until they were diagnosed with more severe forms of black lung disease,[8] they were not sufficiently aware of their injury or potential claim against respondents. The circuit court rejected this argument, finding their reliance upon *Jones* was misplaced. It determined that the language relied upon by petitioners was merely dicta and that *Jones* did not change existing precedent.

Instead, the circuit court found that the decisive issue in this case was when each petitioner objectively knew of an injury and potential claim against respondents so as to trigger the running of the two-year statute of limitations. The circuit court noted that when

---

[8] For example, petitioners claimed that more advanced forms of black lung such as complicated pneumoconiosis or progressive massive fibrosis were required to trigger the statute of limitations. However, as explained below, we also reject this argument.

10

an individual knows of his injury and the facts surrounding that injury place him on notice of a potential claim, our law imposes an affirmative duty upon him to fully investigate the possible claim. It further noted that as a general rule, the statute of limitations starts to run in tort actions when an individual has knowledge of the fact that something is wrong and not when he or she knows of the particular nature of the injury.

In this case, the circuit court found that each petitioner readily identified the manufacturer of the masks they wore; and petitioners acknowledged that either prior to working in coal mines or through annual work safety trainings, they had prior knowledge that inhaling coal, rock, or sand dust could cause occupational lung diseases such as black lung. Likewise, several petitioners testified in their depositions that they recalled that they often had dust on their faces underneath their masks, tasted dust in their mouths, blew dust from their noses, or coughed up dust from their lungs. The circuit court further found that based upon their self-reported breathing problems, medical histories, or application for state/federal benefits, each petitioner had reasonable knowledge of a potential products liability claim more than two years prior to the date their complaints were filed.

Specifically, the circuit court determined that the date at which each petitioner should have objectively and reasonably known something was wrong was the date that each petitioner was either awarded more than 5% *de minimis* disability compensation for a chronic, occupational dust-based lung injury or was medically diagnosed with any form of lung impairment resulting from the inhalation of coal, rock, and sand dust; or the date at which they applied for federal black lung benefits. Thus, under the discovery rule, the two-year statute of limitations in each case began to run on the date when those events occurred.

Addressing the fourth step of *Dunn*, the circuit court examined whether the statute of limitations was tolled based upon respondents' fraudulent concealment of facts which prevented any petitioner from timely pursuing their cause action. On this issue, petitioners relied upon the decision in *State ex rel. 3M Co. v. Hoke*, 244 W. Va. 299, 852 S.E.2d 799 (2020), and argued that respondents had fraudulently concealed defects in their masks since the 1950s and continue to deny that their products are defective. The circuit court rejected these assertions. It found that *Hoke*, a consumer protection action filed by the West Virginia Attorney General in 2003 against some of the same respondents in this case,[9] marked 2003 as the year upon which a reasonable and objective plaintiff would be aware of alleged defects in respondents' masks. Additionally, it found that petitioners offered no other evidence that respondents' alleged decades-long concealment of product defects prevented them from connecting their injuries to respondents' products within the applicable two-year statute of limitations.

___

[9] In *Hoke*, 3M, MSA, and American Optical Corp. were the named defendants.

11

Based on these findings, the circuit court concluded that the facts of each case were not in dispute, and that under those facts, the petitioners' claims were time barred. Thus, there was no genuine issue of material fact for a jury's consideration. This appeal followed.

In West Virginia, "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In conducting a de novo review, this Court applies the same standard for granting summary judgment that a circuit court must apply, and that standard states, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *United Bank, Inc. v. Blosser*, 218 W. Va. 378, 383, 624 S.E.2d 815, 820 (2005) (quoting Syl. Pt. 2, *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756). "Summary judgment is appropriate if, from the totality of the evidence presented . . . the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

Moreover, it has been held that,

[r]oughly stated, a "genuine issue" for purposes of West Virginia Rules of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Syl. Pt. 5, *Jividen v. Law*, 194 W. Va. 705, 461 S.E.2d 451 (1995). Thus, "[i]f there is no genuine issue as to any material fact summary judgment should be granted[,] but such judgment must be denied if there is a genuine issue as to a material fact." Syl. Pt. 4, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

The issue at the center of this appeal is whether petitioners filed their complaints outside of the applicable two-year statute of limitations. *See* W. Va. Code § 55-2-12 (1959). Here, petitioners raise multiple assignments of error challenging the circuit court's determination at summary judgment that their complaints were time barred. We find this case presents facts and arguments similar to those which this Court thoroughly addressed in *Hardy v. 3M Co.*, No. 22-ICA-123, 2023 WL 7402890 (W. Va. Ct. App. Nov. 8, 2023) (memorandum decision). Moreover, the respondents in both cases are identical. We now turn to the issues raised on appeal.

First, petitioners assert that the circuit court mistakenly determined that petitioners either knew or reasonably should have known more than two years prior to filing their

12

complaints of a potential causal link between their occupational dust-related pulmonary diagnoses and the masks they wore to protect themselves from coal, rock, and sand dust while coal mining. On this issue, petitioners advance three correlating arguments: (1) the application of a statute of limitations is a question of fact; (2) the circuit court misapplied the discovery rule; and (3) respondents' fraudulent concealment of material facts tolled the statute of limitations and is a question of fact. We disagree with petitioners on each of these points.

We begin our analysis by noting that "[i]n a great majority of cases, the issue of whether a claim is barred by the statute of limitations is a question of fact for the jury[;]" however, "summary judgment can and should be granted . . . when no genuine issue of material fact exists as to whether the statute of limitations has been violated." *Goodwin v. Bayer Corp.*, 218 W. Va. 215, 220, 624 S.E.2d 562, 567 (2005) (per curiam). This case is governed by the two-year statute of limitations set forth in West Virginia Code § 55-2-12, which states that "[e]very personal action for which no limitation is otherwise prescribed shall be brought . . . within two years after the right to bring the same shall have accrued if it be for damages for personal injuries[.]" In the context of products liability cases, "the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence should know, (1) that he has been injured, (2) the identity of the maker of the product, and (3) that the product had a causal relation to his injury." Syl. Pt. 1, *Hickman v. Grover*, 178 W. Va. 249, 358 S.E.2d 810 (1987).

We addressed comparable arguments under similar facts in *Hardy*. There we found that summary judgment in favor of respondents was appropriate and held:

> It is undisputed that petitioners knew the risks of a coal mining career from the outset of their careers and that coal mining dust could cause black lung. Further, petitioners knew the specific respirators used throughout their careers, and the dates on which they were either diagnosed with some form of black lung, black lung itself, or when they filed for federal benefits for black lung disease. Thus, there is no merit in petitioners' assignment of error that when the statute of limitations begins in to run is a factual inquiry for the jury, where the facts are undisputed, and the only question left is purely legal.

*Hardy*, 2023 WL 7402890, at *7 (footnote omitted). Upon thorough consideration of the record in this case, we find the facts of this case warrant a similar conclusion.

Here, we conclude that based upon the undisputed facts of this case, there are no genuine issues of material fact and no error in the circuit court's determination that respondents are entitled to summary judgment. Namely, it is undisputed that petitioners had actual knowledge of the dangers posed by inhaling such dust, knew the manufacturer of the masks they wore to protect themselves, and knew the masks were not effective based upon their acknowledgment that dust would regularly penetrate the mask, reaching their

face, mouth, and lungs. Further, petitioners had a documented history of occupational related respiratory problems, which they relied upon to apply for state workers' compensation or federal black lung benefits. Moreover, it is undisputed that each petitioner had some form of pulmonary diagnosis related to their occupational exposure to coal, rock, or sand dust which predated the filing of their complaint by more than two years.

Petitioners contend these facts are insufficient for them to make a causal connection between their illnesses and the masks they wore, and cite to decisions from the Commonwealth of Kentucky, among others to support their position. However, we do not find those authorities persuasive. Instead, we turn to established precedent and reiterate that "the statute of limitations begins to run when a plaintiff has knowledge of the fact that something is wrong and not when he or she knows of the *particular nature* of the injury." *Goodwin*, 218 W. Va. at 221, 624 S.E.2d at 568 (citations omitted). Further, "[w]here a plaintiff knows of his injury, and the facts surrounding that injury place him on notice of the possible breach of a duty of care, that plaintiff has an affirmative duty to further and fully investigate the facts surrounding that potential breach." *McCoy v. Miller*, 213 W. Va. 161, 165, 578 S.E.2d 355, 359 (2003) (per curiam) (citations omitted).

We conclude that the record shows that petitioners knew or had reason to know that their breathing problems were caused by exposure to coal, rock, or sand dust despite wearing a mask for protection. Further, the record reveals petitioners sought medical treatment for their breathing problems, received diagnoses based upon occupational exposure, and multiple petitioners sought state or federal benefits. However, despite this knowledge, petitioners failed to fully investigate their potential products liability claims and file complaints prior to the expiration of the statute of limitations. As such, we conclude there are no questions of fact, and the circuit court did not err by granting summary judgment on this issue.

Next, petitioners maintain the circuit court erred in its application of the discovery rule and contend that their causes of action were tolled because there are disputed material facts regarding when they had notice of a potential claim against respondents. We are not persuaded by this argument.

Syllabus Point 4 of *Gaither v. City Hospital Inc.*, 199 W. Va. 706, 487 S.E.2d 901 (1997) established the discovery rule, holding:

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

14

*Id*. The *Dunn* Court further elaborated upon the discovery rule, holding:

> Under the discovery rule set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997), whether a plaintiff "knows of" or "discovered" a cause of action is an objective test. The plaintiff is charged with knowledge of the factual, rather than the legal, basis for the action. This objective test focuses upon whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action.

Syl. Pt. 4, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009).

On this issue, the circuit court reviewed the evidence and objectively determined that the statute of limitations began to run on the date that each petitioner was either awarded more than 5% *de minimis* disability compensation for a chronic, occupational dust-based lung injury or was medically diagnosed with any form of lung impairment resulting from the inhalation of coal, rock, or sand dust; or the date at which they applied for federal black lung benefits.

The essence of petitioners' argument in this appeal is that the statute of limitations could not begin to run until they had subjective knowledge of their claims. However, that is not the standard and after objectively reviewing the facts of this case, we find no error in the circuit court's determination on this issue. Namely, petitioners were put on notice of an injury and potential claim when they were medically diagnosed with a respiratory impairment related to dust exposure, received disability compensation for such impairment, or applied for federal black lung benefits claiming total disability. Indeed, it is not disputed that petitioners knew which masks they wore during their coal mining career, the potential health risks related to coal mining and that they wore the masks to mitigate those risks.[10]

We find that this conclusion consistent with our decision in *Hardy*. In that case, we applied the foregoing principles from *Gaither* and *Dunn* to a similar argument made by the *Hardy* petitioners and determined there was no error by the circuit court. Decidedly, we concluded:

> The circuit court held that the relevant date in these cases for each of the petitioners to objectively and reasonably know that something was wrong is the date that each of them was awarded more than 5% *de minimis* disability compensation for a work-related, dust-based chronic lung injury; or was

---

[10] Petitioners also argue that this is a question of fact for the jury. However, for the same reasons stated under this Court's analysis for the first assignment of error, we give no merit to petitioners' arguments on this point.

15

medically diagnosed with any form of lung impairment resulting from their inhalation of coal, rock, and sand dust; or applied for federal lung benefits. We agree with this conclusion. Here, petitioners knew at the time they received compensation, were medically diagnosed with a lung impairment, or applied for federal black lung that they had suffered an injury putting them on notice. Further, it is not disputed that petitioners knew the exact respirators they wore during the time periods that they worked as coal miners. Lastly, petitioners knew the risks associated with coal mining and that wearing respirators while in the mines was important to protect their health.

*Hardy*, 2023 WL 7402890, at *8.

In a parallel argument, petitioners also contend that the circuit court erred by failing to apply the *Jones* decision to find that the discovery rule tolled the statute of limitations based upon their pure latent injuries. Petitioners cite to the following excerpt from *Jones* to support their position:

We acknowledge that other courts have expanded the discovery rule to product liability cases dealing with chemicals, drugs, asbestosis, and products like the Dalkon Shield. The common denominator in these cases is that the product often causes an injury only after a lengthy period of exposure or the injury surfaces only after a considerable period of time from the date of exposure. Because the injury initially is not sufficiently pronounced to put a plaintiff on notice that he has been injured, courts conclude the statute of limitations does not begin to run until the plaintiff is aware of the injury or through reasonable diligence should have been aware of the injury.

*Jones*, 177 W. Va. at 170, 351 S.E.2d at 185. We are not persuaded by this argument.

To begin we find that in *Hardy*, counsel also argued for the applicability of the same language in *Jones*, but that argument was premised on the statute of limitations being subject to a separate disease or two-disease rule; in other words, it was contended that where an additional or more advanced form of latent disease is diagnosed, a new injury occurs, and a new limitations period is triggered.[11] We declined to apply *Jones* in *Hardy*, finding the *Hardy* petitioners' latent diseases all revolved around a lung impairment related to exposure to coal, rock, or sand dust, and that they all had an earlier diagnosis of a lung impairment related to such exposure which put them on notice of their work-related injury and potential claim. *See Hardy*, 2023 WL 7402890, at *9.

---

[11] According to the order on appeal, the separate disease or two-disease argument was made by counsel and rejected by the court below. In this appeal, petitioners' counsel does not assign error to, or argue that specific issue.

16

Here, while petitioners have presented this Court with a repackaged *Jones* argument, for the reasons similarly stated in *Hardy*, we decline to apply petitioners' *Jones* interpretation to this case and agree with the circuit court that petitioners' reliance on *Jones* is misplaced. As previously established, the relevant determination is whether petitioners objectively knew or should have known of their potential claims. Here, petitioners were similarly injured due to their work-related exposure to coal, rock, or sand dust. Thus, they had knowledge of the fact that something was wrong and notice of a potential claim when they were first awarded workers' compensation benefits, were diagnosed with any form of lung impairment, or filed for federal black lung benefits.

Petitioners also argue that the circuit court erred by not finding that pursuant to step four of *Dunn,* petitioners' claims were tolled due to respondents' fraudulent concealment of facts which prevented them from discovering or pursuing their claims.[12] Petitioners contend that fraudulent concealment exists because respondents knew as early as the 1950s that their masks were defective and unsafe for coal miners, but they continue to deny the masks are defective and promote them as safe for coal mining. We disagree.

Indeed, a lateral argument was raised with this Court in *Hardy* where, in concluding that those claims were timed barred, we provided the following analysis:

> Under step four of *Dunn*, "if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action." Syl. Pt. 5, in part, 225 W. Va. 43, 689 S.E.2d 255 (2009). "Fraudulent concealment involves the concealment of facts by one with knowledge, or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Id.* at 52, 689 S.E.2d at 264 (citation omitted). While a product manufacturer simply indicating that their product is good or effective may constitute a misrepresentation, that does not constitute fraudulent concealment. Here, there is no evidence in the record that respondents concealed facts that prevented the petitioners from discovering or pursuing their cause of action. All the petitioners knew the exact respirators they wore and that they were diagnosed with some form of lung impairment years before filing suit. Therefore, petitioners have failed to show that there was some form of fraudulent concealment that would have tolled the statute of limitations.

*Hardy*, 2023 WL 7402890, at *8.

---

[12] *See* n. 10, supra.

17

We find our *Hardy* rationale to be equally applicable in this case. While it is alleged that there is evidence that respondents have misrepresented the quality of their masks, we reiterated that such evidence does not necessarily equate to fraudulent concealment. Instead, the evidence must establish that respondents mislead or defrauded petitioners by concealing facts, which prevented them from timely filing suit. After examining the record, we agree with the circuit court that there is no evidence to support a finding that respondents fraudulently concealed facts which prevented any petitioner from pursuing his cause of action. Petitioners knew the exact masks they wore and that they were diagnosed with some form of lung impairment more than two years before filing their complaints. Therefore, petitioners' claims were not subject to tolling and, as a result, are time barred.

Accordingly, the circuit court's April 26, 2024, summary judgment order is affirmed.[13]

Affirmed.

**ISSUED:** December 23, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

[13] Petitioners' brief also included an assignment of error regarding the circuit court's exclusion of prior factual testimony from deceased expert witnesses regarding design defects in the masks. However, because we have determined petitioners' claims are time barred, this issue is moot and will not be addressed.